14 N.J. Super. 508 (1951)
82 A.2d 233
MARY L. TODD, PLAINTIFF,
v.
THE POLICEMEN'S AND FIREMEN'S PENSION FUND OF THE CITY OF NEWARK, NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided June 23, 1951.
*509 Messrs. Kalisch & Kalisch (Mr. Samuel Kalisch, Jr., appearing), attorneys for plaintiff.
Mr. Charles Handler (Mr. Thomas M. Kane, appearing), attorney for defendant.
DANIEL J. BRENNAN, J.S.C.
This is a proceeding in lieu of prerogative writ.
The facts are stipulated between counsel representing the parties. Succinctly it appears that the plaintiff, claiming to be the widow of one John L. Todd, brings this action against the defendant seeking to collect a pension to which she avers she is entitled, from October 3, 1949. John L. Todd married the plaintiff on April 30, 1906, at which time he was a patrolman of the Newark Police Department. He retired *510 from the department in June, 1916, with the rank of sergeant, being granted a disability pension of $800 per annum until his death which occurred on October 3, 1949. In the year 1914 Todd abandoned the plaintiff and never resumed cohabitation with her. In February, 1916, our then Court of Chancery in separate maintenance proceedings therein instituted directed Todd to pay the plaintiff for her support and that of her two children the sum of $572 per annum, which he continued to do until his retirement when, by agreement between them, he paid his wife (the plaintiff here) the sum of $24 monthly, until September, 1929. Todd left the State of New Jersey in 1916 but from that date until September, 1929, the payments to the plaintiff were made by Todd through the office of the overseer of the poor of the City of Newark. Todd ceased making these payments in September, 1929, and secured a divorce on September 17, 1929, in the State of Texas. The plaintiff here was not served personally nor did she receive by mail or otherwise any notice, writ, process, summons or citation of these divorce proceedings. In the proceedings in Texas Todd indicated that he did not know the residence of his wife; that they lived together until September 25, 1911, when they separated, and they had not cohabited since that date and for ten years prior to the inception of the proceedings in Texas for divorce. This failure of cohabitation was assigned as his ostensible reason for the divorce and apparently such failure of cohabitation is properly the subject matter of divorce in Texas if proven. Citation was issued for service by publication but, as heretofore indicated, such nor any substitute therefor was ever actually served on Mary L. Todd. In the Texas proceedings the plaintiff is described as Mary McShane Todd. She was never in the State of Texas. Default was entered there against her and the court there without her knowledge or permission appointed counsel to represent her interests and an answer was filed in her name denying all and singular the allegations contained in her husband's petition and excepting thereto because the same is insufficient in law to *511 constitute a cause of action. This appearance was, of course, not authorized by her. The day that Todd secured his divorce he remarried in New Mexico and ceased making any further payments to the plaintiff here.
In the New Jersey Chancery Court proceedings before mentioned an order was entered on January 8, 1930, directing that a writ of sequestration issue against Todd. A sequestrator for his personal estate was appointed and it was ordered that the City of Newark by its Pension Fund pay to said sequestrator the amount due to Todd until the decree of that court was satisfied. The City of Newark was, by the order, enjoined from paying over to Todd any moneys or property, rights or credits, in the hands of the City of Newark due or to grow due to Todd until further order of the court, and he was restrained from making any transfer or assignment of any property of his within the State of New Jersey. The present defendant here, the Policemen's and Firemen's Pension Fund of the City of Newark, New Jersey, did accordingly refrain from making any further payments to Todd. Todd subsequently returned to Newark and by agreement between him and the then attorney for the instant plaintiff he agreed to make payment of $21.75 monthly for the support of the plaintiff and their two children, which he made regularly until his death on October 3, 1949. Plaintiff, Mary L. Todd, filed her application for pension as the widow of John L. Todd for moneys due to her from the date of his death.
It is the contention of the defendant that plaintiff is not entitled to a pension because the divorce granted to John L. Todd is valid and legally binding and the plaintiff is not the widow of said John L. Todd; and secondly, plaintiff's failure to take any prior action to have the divorce decree set aside constitutes an estoppel.
The proceedings instituted in our Court of Chancery were never vacated. The order as therein entered on February 6, 1916, under which Todd made payments until he procured his divorce, and then by agreement thereafter until the date of his death, adjudicated that John L. Todd did, without *512 any justifiable cause (the emphasis is the court's), abandon his wife and separate himself from her, refusing and neglecting to maintain and provide for her "and that the parties have their domicile in this State and the defendant was personally served with process in this State * * *." The jurisdiction of our courts to award maintenance is statutory. R.S. 2:50-39 as amended, P.L. 1948, c. 320; Venere v. Venere, 137 N.J. Eq. 526, 528 (E. & A. 1945); Richman v. Richman, 129 N.J. Eq. 114, 115 (E. & A. 1940). This statute is applicable only where the relationship of husband and wife exists, and a decree of absolute divorce, legally obtained, dissolves such relationship, thereby terminating the wife's right to thereafter sue for separate maintenance. Magowan v. Magowan, 57 N.J. Eq. 195, 198 (Ch. 1898); Field v. Field, 103 N.J. Eq. 174 (Ch. 1928). It appears manifest that Todd recognized plaintiff here as his wife regardless of his divorce obtained in Texas and his remarriage. This viewpoint is buttressed by the fact that he made payments to the plaintiff here out of his retirement fund moneys up to the date of his death. The case of Peff v. Peff, 2 N.J. 513 (1949) cited by the defendant in its brief is distinguishable from that of the case at bar in that in the Peff case service of process was actually made upon the wife there of the divorce proceedings; the maintenance proceedings there had been discontinued and there was no move made to vacate them. The second maintenance proceedings were instituted after divorce. In the instant case the maintenance proceedings were still pending and were activated even after the Texas divorce in that the order of sequestration and restraint was entered on January 8, 1930, and proved effective to cause Todd to resume payments of maintenance to his wife to the date of his death. Todd thus inferentially recognized his obligation to the plaintiff whom he had heretofore abandoned without any justifiable cause.
Plaintiff here avers that she was never apprised of the Texas proceedings, never was served with any papers in any divorce suit which the said John L. Todd instituted *513 against her, and was wholly ignorant of the fact that he had procured a divorce and therefore did not have the opportunity to contest the divorce suit, which she claims she would have contested had she known it had been instituted. A foreign decree rendered without notice may be avoided here collaterally when and as it is sought to be enforced. Doughty v. Doughty, 28 N.J. Eq. 581 (E. & A. 1877); Hedden v. Hedden, 21 N.J. Eq. 61 (Ch. 1870); Flower v. Flower, 42 N.J. Eq. 152 (Ch. 1886); Fairchild v. Fairchild, 53 N.J. Eq. 678 (E. & A. 1895); Royal Arcanum v. Carley, 52 N.J. Eq. 642 (Ch. 1894); 19 C.J., page 375, § 845, and particularly where it is procured through fraud. It appears as heretofore stated that Todd represented to the Texas court in an affidavit filed there by him that he did not know the plaintiff's residence when in fact that information was known to him or could have been readily ascertained so as to acquaint his wife with the divorce proceedings, in order that she might have due notice and knowledge thereof and that she might appear and defend in the suit. He quickly ascertained her whereabouts when his pension fund payments, due from the defendant here, were sequestered by the order of our Chancery Court. His denial of such knowledge is therefore unworthy of belief. Vide Hollander v. Hollander, 137 N.J. Eq. 70 (E. & A. 1945) and explicitly page 79 thereof. The appearance of an attorney in the divorce proceedings was a sham. Such was never authorized by this plaintiff nor known to her, and she was never consulted by the court-appointed attorney and never had the benefit of any advice from that attorney. This is not deemed to be an "appearance" by her in that cause. Where the defendant is duly served within the jurisdiction or voluntarily appears (the emphasis is the court's) the decree cannot be attacked elsewhere other than for want of jurisdiction over the subject matter and fraud. The former may be gathered from the record as a decree not within the issue or that the defendant was not served within the jurisdiction or the attorney was not authorized to appear for her, or that the foreign domicile did not exist. The *514 determination of the foreign court as to jurisdictional facts is final unless procured by fraud. It follows that the fraud must be relied on to overthrow the foreign record. Munday v. Vail, 34 N.J.L. 418 (Sup. Ct. 1871); Forrest v. Price, 52 N.J. Eq. 16 (Ch. 1893); Fairchild v. Fairchild, supra; Staedler v. Staedler, 6 N.J. 380, 391 (1951). For a further exposition of the rule that recognition of a foreign decree of divorce based on fraud will be refused in New Jersey, see Hubschman v. Hubschman, 140 N.J. Eq. 284 (E. & A. 1947). It is my opinion that the requirements of procedural due process were not met and that the conduct of Todd in procuring his divorce was fraudulent. Felt v. Felt, 59 N.J. Eq. 606 (E. & A. 1899); Atherton v. Atherton, 181 U.S. 172; 21 S.Ct. 544; 45 L.Ed. 803, cited with approval in Hollander v. Hollander, supra. In Lawler v. Lawler, 2 N.J. 527 (1949) Sophia Lawler sued Charles Augustus Lawler for a judgment declaratory of her status as his lawful wife. Alice O'Dell Lawler intervened as a party defendant only to the extent of setting up the defense of laches, she being his wife after a Nevada decree of divorce obtained by him from the plaintiff. Our Supreme Court held that the first wife was not estopped by laches from obtaining determination that she was the lawful wife, notwithstanding that she became aware of divorce decree after its rendition and that husband and another claimed to be married and were living together as husband and wife, and first wife accepted support money from husband without attacking the divorce decree for over a ten-year period. This outgiving disposes of the defendant's contention on the question of laches.
It is this court's opinion that the plaintiff was the legal wife of John L. Todd in the light of the facts and circumstances here recited; that the divorce obtained by her husband in Texas was fraudulently procured and without her knowledge and without any notice to her; that her husband by his conduct in making payments to her of maintenance up to the date of death recognized her status and the existing validity of the Court of Chancery proceedings.
*515 Judgment will be entered accordingly in favor of the plaintiff, and against the defendant in the amount here presently sought, to wit, $603, without costs.
Submit order accordingly.